No. 26-30154

# In the United States
# Court of Appeals for the Fifth Circuit

FIREARMS POLICY COALITION, INCORPORATED; SECOND AMENDMENT FOUNDATION; LOUISIANA SHOOTING ASSOCIATION,

*Plaintiffs-Appellants/Cross-Appellees*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; DANIEL DRISCOLL, ACTING DIRECTOR, U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; TODD WALLACE BLANCHE, ACTING U.S. ATTORNEY GENERAL,

*Defendants-Appellees/Cross-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA, No. 6:20-cv-01438

## BRIEF OF PLAINTIFFS-APPELLANTS

George J. Armbruster, III
ARMBRUSTER & ASSOCIATES,
   APLC
332 E. Farrel Road, Suite D
Lafayette, LA 70508
(337) 889-5511
george@arm-assoc.com

David H. Thompson
*Counsel of Record*
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

*FPC v. BATFE*, No. 26-30154

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| *Plaintiffs-Appellants/Cross-Appellees* | *Counsel for Plaintiffs-Appellants/Cross-Appellees* |
|---|---|
| Firearms Policy Coalition, Inc. | David H. Thompson |
| | Peter A. Patterson |
| Second Amendment Foundation | William V. Bergstrom |
| Louisiana Shooting Association | COOPER & KIRK, PLLC |
| Caleb Reese* | |
| | George J. Armbruster, III |
| Joseph Granich* | ARMBRUSTER & ASSOCIATES, APLC |
| Emily Naquin* | |
| | Adam Kraut* |
| | SECOND AMENDMENT FOUNDATION |
| | |
| | John W. Dillon* |
| | DILLON LAW GROUP |
| | |
| | Joseph G.S. Greenlee* |
| | FPC ACTION FOUNDATION |
| | |
| | Raymond M. DiGuiseppe* |
| | DIGUISEPPE LAW FIRM |
| *Defendants-Appellees/Cross-Appellants* | *Counsel for Defendants-Appellees/Cross-Appellants* |
| Bureau of Alcohol, Tobacco, Firearms and Explosives | Steven H. Hazel |
| | Daniel M. Riess |
| Daniel Driscoll, in his official capacity as Acting Director of the BATFE | U.S. DEPARTMENT OF JUSTICE |

| Todd Blanche, in his official capacity as Acting Attorney General of the United States | |

Attorneys whose names are denoted with an asterisk entered appearances in the district court but have not entered appearances in the Fifth Circuit. Plaintiffs whose names are denoted with an asterisk were Plaintiffs below but are not appellants before the Fifth Circuit.

Dated: June 22, 2026

/s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellants/Cross-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument. This case satisfies the standards for allowing oral argument set forth in Federal Rule of Appellate Procedure 34(a)(2). The appeal is not frivolous and the issues presented here regarding the appropriate scope of injunctive relief against the government's enforcement of laws preventing handguns sales to 18-to-20-year-olds are both important and have not been authoritatively decided as this Court's previous decision in this case addressed the merits but did not address the appropriate scope of relief. Finally, Plaintiffs-Appellants respectfully submit that the decisional process in this case would be significantly aided by oral argument.

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS........................................................ i

STATEMENT REGARDING ORAL ARGUMENT............................................... ii

TABLE OF CONTENTS .................................................................................... iii

TABLE OF AUTHORITIES................................................................................iv

JURISDICTIONAL STATEMENT .....................................................................1

ISSUES PRESENTED.........................................................................................2

INTRODUCTION ...............................................................................................3

STATEMENT OF THE CASE.............................................................................4

SUMMARY OF THE ARGUMENT ...................................................................9

ARGUMENT ....................................................................................................12

    I.     Standard of Review ...........................................................................12

    II.    The District Court Should Have Enjoined All Enforcement of the Challenged Laws Against Plaintiffs' Members. ....................................12

        A. The Geographic Limitation on the Scope of the Injunction Was Improper. ........................................................................................14

        B. The Temporal Limitation on the Scope of the Injunction Was Improper. ........................................................................................21

CONCLUSION .................................................................................................28

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022).................................................23, 24

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) ...............................................24, 25

*Ala. Legis. Black Caucus v. Alabama*,
575 U.S. 254 (2015).................................................................26

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
792 F. Supp. 3d 985 (N.D. Cal. 2025).....................................15, 16

*Americans for Prosperity v. Bonta*,
594 U.S. 595 (2021).................................................................8

*Art & Antique Dealers League of Am., Inc. v. Seggos*,
121 F.4th 423 (2d Cir. 2024).....................................................15

*Beatty v. Kurtz*,
27 U.S. (2 Pet.) 566 (1829).......................................................20

*Califano v. Yamasaki*,
442 U.S. 682 (1979)................................................14, 15, 17, 18

*Chancey v. May*,
(1722) 24 Eng. Rep. 265; Prec. Ch. 591....................................19

*Christian Emps. All. v. U.S. Equal Opportunity Comm'n*,
719 F. Supp. 3d 912 (D.N.D. 2024)........................................16, 24

*Comput. & Commc'ns Indus. Ass'n v. Paxton*,
747 F. Supp. 3d 1011 (W.D. Tex. 2024) ....................................16

*Cullen v. Duke of Queensberry*,
(1781) 28 Eng. Rep. 1011; 1 Bro. C. C. 100 ..............................20

*Data Processing Serv. v. Camp*,
397 U.S. 150 (1970)................................................................16

*DeFunis v. Odegaard*,
416 U.S. 312 (1974)................................................................11

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)...............................................................27, 28

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023)..............................................................................26

*Firearms Policy Coalition, Inc. v. Bondi*,
  805 F. Supp. 3d 721 (N.D. Tex. 2025)........................................................15

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
  740 F. Supp. 3d 509 (N.D. Tex. 2024)........................................................16

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)..............................................................12, 13, 19, 24

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*,
  477 U.S. 274 (1986)..............................................................13, 20, 23, 27

*Lara v. Comm'r Pa. State Police*,
  125 F.4th 428 (3d Cir. 2025)........................................................................26

*Leigh v. Thomas*,
  (1751) 28 Eng. Rep. 201; 2 Ves. Sen 312..............................................19, 20

*Lujan v. Defs.' of Wildlife*,
  504 U.S. 555 (1992)........................................................................................22

*Madsden v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994)..........................................................................14, 15, 17

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023)..................................................................14, 15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022).............................................................................................14

*Nat'l Ass'n for Gun Rts., Inc. v. Garland*,
  697 F. Supp. 3d 601 (N.D. Tex. 2023)........................................................16

*Nat'l Ass'n of Realtors v. Nat'l Real Est. Ass'n, Inc.*,
  894 F.2d 937 (7th Cir. 1990)..................................................................15, 19

*NRA v. ATF*,
  700 F.3d 185 (5th Cir. 2012).......................................................................14

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)........................................................................................20

*Planned Parenthood Fed'n of Am., Inc. v. Kennedy*,
  792 F. Supp. 3d 227 (D. Mass. 2025).........................................................15

*Reese v. BATFE*,
127 F.4th 583 (5th Cir. 2025)......................................................3, 5, 14

*Speech First, Inc. v. Sands*,
44 S. Ct. 675 (2024) (mem.)................................................................26

*Speech First, Inc. v. Sands*,
69 F.4th 184 (4th Cir. 2023)................................................................26

*Steele v. Bulova Watch Co.*,
344 U.S. 280 (1952)............................................................................18

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)............................................................................11

*Texas v. EEOC*,
933 F.3d 433 (5th Cir. 2019)..............................................................12

*Trump v. CASA*,
606 U.S. 831 (2025)......................................................................17, 18

*United States v. Mendoza*,
464 U.S. 154 (1984)............................................................................28

*Warth v. Seldin*,
422 U.S. 490 (1975)......................................................................13, 16

*Worth v. Jacobson*,
108 F.4th 677 (8th Cir. 2024).............................................................26

**Statutes & Regulations**

18 U.S.C.
§ 922(b)(1) .........................................................................................4
§ 922(c)(1) ......................................................................................4, 5

27 C.F.R.
§ 478.96(b)..........................................................................................5
§ 478.99(b)(1) .....................................................................................5
§ 478.124(a).........................................................................................5
§ 478.124(f) .........................................................................................5

**Other Authorities**

Br. of Federal Respondents, *W. Va. Citizens Def. League, Inc. v. ATF* (U.S. Oct. 20,
2025) (No. 25-132), 2025 WL 2993918 ..............................................26

Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417 (2017)......................................................................................15

Ltr. from Solic. Gen. D. John Sauer to Speaker Mike Johnson (July 25, 2025), https://perma.cc/TGU7-Y4XQ. .................................................................17

JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS (Boston, Charles C. Little & James Brown ed., 3d ed. 1844).............................................................13, 19

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Plaintiffs brought claims arising under federal law. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, because this appeal is from a final judgment that disposed of all parties' claims. The district court entered final judgment on January 27, 2026, and Plaintiffs timely noticed this appeal on March 17, 2026. The Government timely filed its notice of appeal on March 30, 2026.

# ISSUES PRESENTED

After this Court previously concluded that the federal law banning licensed sales of handguns and handgun ammunition to law-abiding 18-to-20-year-old adults violates the Second Amendment, the district court entered judgment in Plaintiffs' favor, but with an unduly narrow scope of relief. This appeal presents the questions:

1. Whether the district court erred when it limited the scope of its injunction to the geographic boundaries of the United States Court of Appeals for the Fifth Circuit.

2. Whether the district court erred when it limited the scope of its injunction to cover only those members of the plaintiff organizations who were members as of the date of entry of its judgment.

## INTRODUCTION

Firearms Policy Coalition, Second Amendment Foundation, and Louisiana Shooting Association are three membership organizations that work to promote and defend the Second Amendment-protected rights of their members. They brought this suit more than five years ago to establish broadly that their 18-to-20-year-old members have a full measure of Second Amendment rights and, specifically, that the federal prohibition on 18-to-20-year-olds purchasing handguns at retail was unconstitutional.

Their efforts were rewarded on January 30, 2025, when this Court held that "the text of the Second Amendment includes eighteen-to-twenty-year-old individuals among 'the people' whose right to keep and bear arms is protected," and that the specific prohibition at issue had no support in the historical record. *Reese v. BATFE*, 127 F.4th 583, 600 (5th Cir. 2025).

This case is before this Court again because, on remand, the Government sought to render this a victory in name only and deny the Plaintiff Organizations and their members an enforceable remedy for the ongoing deprivation of their constitutional rights. And the district court at least partially rewarded those efforts. It limited the scope of injunctive relief to members who reside in the states within the geographic boundaries of this Circuit and who were members of the Plaintiff Organizations as of the day the district court entered judgment. In doing so, it

transgressed Supreme Court and Fifth Circuit precedent by deviating, without justification, from the ordinary practice of affording complete relief to parties that have prevailed on the merits, including associational plaintiffs who are suing on behalf of their members.

## STATEMENT OF THE CASE

Plaintiffs-Appellants Firearms Policy Coalition, Inc., Second Amendment Foundation, and Louisiana Shooting Association (collectively "Plaintiff Organizations") filed this suit on November 6, 2020. ROA.20. They were joined at the time by two individual plaintiffs, Caleb Reese and Joseph Granich, *id.*, members of all three Plaintiff Organizations, and joined soon after by another in the same posture, Emily Naquin. ROA.318.

Plaintiffs challenged the constitutionality of federal statutes and regulations that together bar 18-to-20-year-olds from purchasing handguns or handgun ammunition from federal firearms licensees ("FFLs"). The key challenged statutory provision makes it unlawful for an FFL

> to sell or deliver … any firearm or ammunition … if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

18 U.S.C. § 922(b)(1). The challenged laws also prohibit FFLs from selling a firearm to a person "who does not appear in person at the licensee's business premises (other

than another licensed importer, manufacturer, or dealer)" unless the person submits a sworn statement that "in the case of any firearm other than a shotgun or a rifle, [he or she is] twenty-one years or more of age." *Id.* § 922(c)(1). These statutes are implemented by regulations that similarly restrict handgun sales to individuals over 21. *See* 27 C.F.R. §§ 478.99(b)(1), 478.96(b), & 478.124(a), (f). "As a result, eighteen-to-twenty-year-olds may not purchase handguns from FFLs." *Reese*, 127 F.4th at 587 (quotation marks omitted).

In *Reese*, this Court held these restrictions violate the Second Amendment, explaining that "the text of the Second Amendment includes eighteen-to-twenty-year-old individuals among 'the people' whose right to keep and bear arms is protected" and the Government had offered "scant evidence that eighteen-to-twenty-year-olds' firearm rights during the founding-era were restricted in a similar manner to the contemporary federal handgun purchase ban." *Id.* at 600. The Court reversed and remanded to the district court for further proceedings consistent with its opinion declaring the ban unconstitutional. *Id.* ("In sum, 18 U.S.C. §§ 992(b)(1), (c)(1) and their attendant regulations are unconstitutional in light of our Nation's historic tradition of firearm regulation.")

Given the time-bound nature of the injuries to the individuals affected by the challenged laws, Reese, Granich, and Naquin had all aged out before this Court issued its opinion. Accordingly, the Organizational Plaintiffs have consistently, over

the more than half a decade that this case has been litigated, identified new members who are adversely affected by the ban on purchasing handguns or handgun ammunition, and they have continued to litigate the case on behalf of their membership. *See, e.g.*, ROA.1174–75.

On remand from this Court's decision, the district court stayed proceedings until the deadline for the Government to file a petition for certiorari had passed, ROA.1211. Even though this Court's opinion in *Reese* held a federal statute unconstitutional, the Government ultimately "decided not to file a petition for a writ of certiorari in this case." ROA.1212. The district court then ordered the parties to confer and submit a proposed judgment for its review. ROA.1214. Following a good faith attempt to reach agreement on proposed language, the parties submitted dueling proposed judgments. ROA.1221, ROA.1225.

Plaintiffs' proposal would have entered judgment in Plaintiffs' favor, declared the challenged laws unconstitutional, and enjoined Defendants and those working in active concert or participation with them who have notice of the judgment from enforcing the challenged laws to prevent handgun or handgun ammunition sales to any 18-to-20-year-old members of the Plaintiff Organizations. ROA.1221. The Government's proposal was narrower. It provided for no injunctive relief at all, and it would have limited declaratory relief such that it applied only to the three named individual plaintiffs (who by this time were all over 21 years old), and to any

members of the Plaintiff Organizations who (a) were members at the time the case was filed on November 6, 2020, and (b) who had "been identified and verified by respective Plaintiff organizations during the course of this litigation" (a null set, given that the other affected members identified by Plaintiffs during the course of litigation all had become members after November, 6 2020). ROA.1225.

The parties briefed the merits of their proposals, and on October 7, 2025, the district court entered a judgment that differed from both parties' submissions. ROA.1263–64. The district court granted both declaratory and injunctive relief to Plaintiffs, but limited the scope of that relief to the three named individual plaintiffs and "individuals and federally licensed firearms importers, manufacturers, dealers or collectors who were members of" the Plaintiff Organizations "at the time this action was filed on November 6, 2020," though it omitted the Government's proposal that those individuals had to have been identified by Plaintiffs to the Government during the course of the litigation. ROA.1263. Instead, the district court ordered the Plaintiff Organizations, within 21 days of issuance of the judgment, to "provide to Defendants a verified list of their members as of November 6, 2020" to whom the injunction would apply. ROA.1264. It also added the limitation that the injunction would only apply "within the jurisdictional boundaries of the United States Court of Appeals for the Fifth Circuit (*i.e.*, Mississippi, Louisiana, and Texas)." *Id.*

Three days later, the parties filed a joint motion to alter or amend the judgment to remove the provision compelling the Plaintiff Organizations to divulge their membership lists as of November 6, 2020. Plaintiffs asserted that such an order violated the First Amendment rights of themselves and of their members, *see, e.g.*, *Americans for Prosperity v. Bonta*, 594 U.S. 595, 606 (2021), and the Government stressed that "as a general policy, [it] does not compel disclosure of the identity of members of private organizations, and [it] did not seek to do so here." ROA.1265. The Plaintiff Organizations emphasized that, by submitting a revised judgment that omitted the compelled disclosure of their members in an attempt to avoid emergency litigation to stay that requirement, they did not concede that the other provisions of the district court's judgment were appropriate and rather reserved the right to challenge those other limitations on appeal. ROA.1266.

In response, the district court vacated its earlier judgment and set a telephone conference with the parties to discuss the appropriate resolution of the joint motion. ROA.1270. After the fall 2025 government shutdown necessitated a delay in holding that conference, the district court ordered the parties during the telephone conference held on December 16, 2025, to submit a joint proposed judgment that conformed with specifications it laid out in that conference. ROA.1274 The parties, reserving rights to appeal those aspects of the judgment with which they disagreed, submitted a proposed judgment on January 23, 2026. ROA.1275. That judgment incorporated,

as relevant to this appeal, two restrictions which Plaintiffs opposed. First, it incorporated the same geographic limitation to "the jurisdictional boundaries of the United States Court of Appeals for the Fifth Circuit (*i.e.*, Mississippi, Louisiana, and Texas)" that the original, vacated, judgment had included (hereinafter, the "Geographic Limitation"). ROA.1276. Second, it limited relief to those individuals who were members of one or more of the Plaintiff Organizations "as of the date of entry of this judgment" (hereinafter, the "Temporal Limitation"). ROA.1276–77.

On January 27, 2026, the district court adopted the proposed judgment with both the Geographic and Temporal Limitations. ROA.1278 The parties both timely appealed from that final judgment. ROA.1280, 1282.

## SUMMARY OF THE ARGUMENT

This Court should reverse and remand with instructions to enter a judgment that provides injunctive relief that covers all of the Plaintiff Organization's 18-to-20-year-old members. While the district court appropriately granted injunctive relief in this case, it erred in defining the scope of that relief. The general principle of injunctive relief, reaffirmed many times by this Court and the Supreme Court, is that a district court should endeavor where possible to afford an injured party complete relief for their injuries. The Geographic Limitation deviates from this principle, by denying relief to the Plaintiff Organizations' members in all but three states, for no good reason. To the extent that the district court was concerned with minimizing the

9

burden on the Government by enjoining the law only in a place where the Government had asserted it was already declining to enforce it, that was error. The Government's burden in complying with an injunction against violating the Constitution is not a valid reason to curtail the scope of injunctive relief. And to the extent the district court was concerned with granting a "universal injunction," it need not have been. As the Supreme Court recently made clear, an injunction is not "universal" if it merely affords relief to the parties before it. Whether that relief is limited to the geographic boundaries of the Circuit where the suit was brought (or appealed) or across the country is simply irrelevant to those concerns.

The Temporal Limitation is equally without foundation in precedent and runs afoul of the complete relief principle without justification. The Government invoked Article III limitations on the judiciary's power and principles of equity to support limiting relief based on when members joined the Plaintiff Organizations. Neither argument should have been accepted. As for Article III, the Supreme Court has repeatedly recognized the right of associations to sue to vindicate the rights of their members in much the same way it has permitted class representatives to sue on behalf of a class of similarly situated individuals. Just as people can become members of a class after a class is certified and still enjoy the benefits of injunctive relief afforded to the class (often by design), so too can individuals who become members of an organization after a complaint is filed or after judgment is entered

without running afoul of Article III limitations—indeed, in some cases, including school desegregation or affirmative action cases, that is necessary to make relief meaningful. *Compare DeFunis v. Odegaard*, 416 U.S. 312 (1974) *with Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard Coll.*, 600 U.S. 181, 197–201 (2025). And traditional principles of equity are also no barrier to entry of an adequate decree here. The Government below raised the specter of estoppel principles not preventing members, or future members, of the Plaintiff Organizations from relitigating issues like this one in cases where they are unsuccessful, thereby giving them multiple bites at the apple. The flaw with this argument—and the throughline in all of the Government's arguments for narrower relief—is that estoppel operates against the parties to an action, in this case the Plaintiff Organizations, who *would be* estopped from bringing a separate suit against the Government if they had not been successful here. On the other hand, limiting relief to exclude future members or members who live in other districts or circuits would entail a significant waste of judicial resources as individuals would be forced to bring their own suits or organizations would be required to bring multiple duplicative suits around the country and then repeat those efforts in each circuit where they win, each time they win, to ensure their membership remains covered. In any event, the Government's estoppel argument should receive particularly little credence in this case given that, if the Government did not want to abide by the rule this Court laid down in *Reese*, it

11

could have sought certiorari from the Supreme Court to have that decision reviewed but declined to do so. Because nonmutual collateral estoppel does not apply to the Government, it can continue to enforce and defend the law across the rest of the country. In light of that decision, a proper injunction is particularly important and this Court should reverse and remand for entry of complete relief.

## ARGUMENT

### I.  Standard of Review

This Court reviews the appropriate scope of an injunction *de novo*. *See Texas v. EEOC*, 933 F.3d 433, 450 (5th Cir. 2019).

### II.  The District Court Should Have Enjoined All Enforcement of the Challenged Laws Against Plaintiffs' Members.

The district court erred in unduly narrowing the scope of the injunction it granted to Plaintiffs. The Supreme Court has repeatedly recognized, including as recently as three years ago, that associations like Firearms Policy Coalition, Second Amendment Foundation, and Louisiana Shooting Association, have standing to sue on behalf of their injured members. *See SFFA*, 600 U.S. at 197–201 (2023); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). That standing is explicitly predicated on the fact that the organization can *get relief* for its members who are not personally before the Court: "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members

12

of the association actually injured." *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). Indeed, in *Brock* the Supreme Court explicitly condoned relief for organizational members and rejected the notion that a union suing on behalf of its thousands of members had to bring a class action to secure relief for those members. *Id.* at 288. As discussed more fully below, that conclusion was undoubtedly correct as the practice of affording relief to associations of individuals who share common interests has a long history in this country and before, extending back to the English common law. *See* JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS 135, § 107 (Boston, Charles C. Little & James Brown ed., 3d ed. 1844) (explaining that representational standing suits could be maintained at equity "where the parties form a voluntary association for public or private purposes, and those, who sue or defend, may fairly be presumed to represent the rights and interests of the whole"). Any other rule would result in hundreds of thousands, if not millions of individuals, bringing suits or joining mass actions to vindicate their constitutional rights.

That means that the Plaintiff Organizations must have the ability to secure relief for their members in this suit. They have consistently asserted the rights of

their members, and this Court has twice recognized that *this specific injury* is one that is amenable to litigation by an organization for its members' benefit. *See NRA v. ATF*, 700 F.3d 185, 191 (5th Cir. 2012), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (establishing "NRA's associational standing on behalf of its 18-to-20-year-old[] members"); *see also Reese*, 127 F.4th at 586. The district court nevertheless limited the scope of its order in two critical respects that caused the grant of relief to fall short of remedying Plaintiffs' demonstrated injuries. Neither was appropriate.

**A. The Geographic Limitation on the Scope of the Injunction Was Improper.**

First, the district court narrowed the scope of its injunction to cover only the Plaintiff Organizations' members who live within the geographic bounds of the Fifth Circuit. This Geographic Limitation was inappropriate because the Plaintiff Organizations have members across the country, and narrowing the scope of its ruling to exclude them denies them meaningful relief, for no apparent reason.

An injunction "should be crafted to 'provide complete relief to the plaintiffs.' " *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Although courts must also consider fairness to a defendant in setting the terms of an injunction, burden concerns should not trump complete relief: "[I]njunctive relief should be no more burdensome to the defendant *than necessary to provide complete relief* to the plaintiffs." *Madsden v. Women's*

*Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano*, 442 U.S. at 465) (emphasis added). Thus, while not the only factor to be considered, "[c]omplete relief is … the starting point for equitable relief." Samuel Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417, 468 (2017).

In the case of an association (or multiple associations, as here), litigating on behalf of its members, the "complete-relief principle" means that organizations frequently file suit on behalf of, and courts often grant relief in favor of, an organization's entire affected membership. *See Nat'l Ass'n of Realtors v. Nat'l Real Est. Ass'n, Inc.*, 894 F.2d 937, 942 (7th Cir. 1990) (Posner, J.) ("[A]n association is free as a matter of federal law to seek an injunction against wrongs that injure its members."). Examples from very recent history abound. *See Mock*, 75 F.4th at 587; *Firearms Policy Coalition, Inc. v. Bondi*, 805 F. Supp. 3d 721, 733 (N.D. Tex. 2025) (enjoining the defendant from "[i]nterpreting or enforcing 39 C.F.R. § 232.1(1) to prohibit Plaintiffs' (and their members) possession and carrying of firearms inside of an ordinary United States Post Office"); *Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 443 (2d Cir. 2024) ("We direct the district court to grant injunctive relief barring the enforcement of the Display Restriction against Plaintiffs and their members."); *Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, 792 F. Supp. 3d 227, 271 (D. Mass. 2025); *Am. Fed'n of Gov't Emps., AFL-CIO v.*

*Trump*, 792 F. Supp. 3d 985, 1006 (N.D. Cal. 2025); *Comput. & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011, 1044 (W.D. Tex. 2024); *Christian Emps. All. v. U.S. Equal Opportunity Comm'n*, 719 F. Supp. 3d 912, 919 (D.N.D. 2024); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 697 F. Supp. 3d 601, 634 (N.D. Tex. 2023) (O'Connor, J.); *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 536 (N.D. Tex. 2024). Indeed, the Supreme Court has noted that "in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind." *Warth*, 422 U.S. at 515 (citing *Nat'l Motor Freight Ass'n v. United States*, 372 U.S. 246 (1963); *Data Processing Serv. v. Camp*, 397 U.S. 150 (1970)).

The district court did not provide a justification for its decision to deviate from these principles and impose the Geographical Limitation, and it was not a limitation the Government argued for or sought in its papers (though the Government did represent that following this Court's merits decision in *Reese* and "consistent with the executive branch's ordinary practice of intra-circuit acquiescence," the Government "do[es] not plan to enforce the challenged laws within the geographical boundary of the Fifth Circuit" against members of the Plaintiff Organizations or anyone else). ROA.1232. That said, there could be no justification. To the extent the aim was to minimize the burden on the Government by tying its hands only in the place where it had agreed to have them tied, as discussed above, the burden on the

16

government is a legitimate consideration, but not at the expense of providing complete relief to the plaintiffs. *See Madsen*, 512 U.S. at 765; *see also Califano*, 442 U.S. at 702 (holding that nationwide class relief is appropriate "since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical scope of the plaintiff class"). It should not be forgotten that, to the extent that the Government was concerned with the nationwide impact of this Court's decision that a federal law is unconstitutional, it could have sought to have that decision reviewed by the Supreme Court, but declined to do so. *See* Ltr. from Solic. Gen. D. John Sauer to Speaker Mike Johnson (July 25, 2025), https://perma.cc/TGU7-Y4XQ.

To the extent that the district court was concerned about raising the specter of a "universal" injunction because of its nationwide scope, that was wrong as well. In its briefing before the district court, the Government argued that the Supreme Court's recent decision in *Trump v. CASA*, 606 U.S. 831 (2025), made a "universal injunction" improper in this case because "the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding" and "[n]othing like a universal injunction was available at the founding, or … for more than a century thereafter." ROA.1232 (quoting *CASA*, 606 U.S. at 856) (brackets and ellipses in Government brief). But an injunction that has a nationwide scope but that targets only the parties before the court is not a "universal injunction"

17

at all. *CASA* was explicit on this point: "Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court. … The difference between a traditional injunction and a universal injunction is not so much *where* it applies, but *whom* it protects: A universal injunction prohibits the Government from enforcing the law against *anyone*, anywhere." *CASA*, 606 U.S. at 837 n.1; *see also Califano*, 442 U.S. at 702. A court "exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952). In short, while the Supreme Court indicated a universal injunction may be problematic, a *nationwide* injunction is not. *CASA*, 606 U.S. at 837 n.1. In this case, Plaintiffs did not request a "universal" injunction that would have kept the Government from enforcing the 18-to-20-year-old ban "against *anyone*, anywhere," *CASA*, 606 U.S. at 858 (emphasis added), but rather a party-specific injunction that would specifically protect the members of the Plaintiff Organizations wherever they might be found across the country.

That mode of relief is entirely consistent with *CASA* because, as *CASA* itself noted, "the complete-relief principle has deep roots in equity," and, properly understood, "the complete-relief principle" asks "whether an injunction will offer complete relief *to the plaintiffs before the court*." 606 U.S. at 851–52. That the parties in this case are suing as representatives of their members does not change things. First, as noted above, the Supreme Court has repeatedly recognized the

18

ability of associations to sue to vindicate the rights of their members, which necessarily requires getting relief for those members. *See Hunt*, 432 U.S. at 343; *Nat'l Ass'n of Realtors*, 894 F.2d at 941. Representational suits on behalf of an association likewise have deep roots in equity that extend back to the Founding and before. As Plaintiffs noted above, no less an authority than Justice Story recognized as much in his influential treatise on equity, when he explained that although it was the "general rule in Equity … that all persons materially interested, either legally, or beneficially, in the subject-matter of a suit, are to be made parties to it … however numerous they may be, so that there may be a complete decree, which shall bind them all," that rule was "subject to certain exceptions." JOSEPH STORY, COMMENTARIES ON EQUITY PLEADINGS 83, § 72 (Boston, Charles C. Little & James Brown ed., 3d ed. 1844). Among those exceptions Justice Story identified were cases "where the parties form a voluntary association for public or private purposes, and those, who sue, or defend, may fairly be presumed to represent the rights and interests of the whole[.]" *Id.* at 119, § 97. Indeed, well before the Founding, at least as early as 1722, the High Court of Chancery in England recognized that voluntary associations could "sue on behalf of themselves and all the rest. … of the same undertaking" without "making **all** the members parties." *Chancey v. May* (1722) 24 Eng. Rep. 265, 265; Prec. Ch. 591, 592 (emphasis added). The English courts continued to recognize this practice right up to the Founding. *See Leigh v. Thomas*

(1751) 28 Eng. Rep. 201, 201; 2 Ves. Sen 312, 312 ("[O]ne may bring a bill in behalf of himself and the rest, and they are ordered to come in under the decree[.]"); *Cullen v. Duke of Queensberry* (1781) 28 Eng. Rep. 1011, 1011; 1 Bro. C. C. 100, 101 (rejecting, in a suit over a contract to acquire a house for a ladies club, the defendant's argument that all 60 members of the club should be made parties to the suit). And early in our country's history the Supreme Court embraced this practice (in an opinion by Justice Story) when it held that "certain persons, belonging to a voluntary society, and having a common interest, may sue in behalf of themselves and others having the like interest, as part of the same society; for purposes common to all, and beneficial to all." *Beatty v. Kurtz*, 27 U.S. (2 Pet.) 566, 585 (1829).

In short, the roots of associational standing and associational relief are at least as deep as those of the class action. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("Although representative suits have been recognized in various forms since the earliest days of English law, … class actions as we recognize them today developed as an exception to the formal rigidity of the necessary parties rule in equity, … as well as from the bill of peace, an equitable device for combining multiple suits."). Indeed, the Supreme Court has favorably compared associational litigation to class actions, noting that where "a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir

of expertise and capital." *Brock*, 477 U.S. at 289. They are, in effect, a natural "class." And it would be obviously improper for a court to certify a nationwide class and then, out of a misplaced sense of judicial restraint, grant relief only to members of the class from its district or circuit while denying relief to injured members located throughout the rest of the country. But that is precisely the error the district court committed here.

**B. The Temporal Limitation on the Scope of the Injunction Is Improper.**

The Temporal Limitation on the injunction is equally invalid, for many of the same reasons. The restriction ultimately adopted by the district court—limiting injunctive relief to those members who were members of the Plaintiff Organizations at the time of the entry of judgment—was a modified version of a stricter limitation that the Government had proposed to limit relief to individuals who were members at the time the suit was *filed* (and identified by Plaintiffs to the Government during the course of the litigation). *See* ROA.1225. The Government's proposal was fundamentally flawed in that it would have granted relief to no one—for instance, Christian Michael Broussard, the member who filed a declaration with this Court on appeal to demonstrate the Plaintiff Organizations' continued standing, was not a member of any of the Plaintiff Organizations when the suit was filed in November 2020 and so would not have been eligible for relief under the Government's proposal. Meanwhile, the members who *had* been identified in the original

complaint in this case, Reese and Granich, are now well over the age of 21 and not impacted by the challenged laws.

Moving the cutoff date to the entry of judgment failed to render the judgment acceptable because, again, it fails to afford complete relief to the Plaintiff Organizations whose membership includes individuals—including individuals 18-to-20-years-old—who were not members at the time that judgment was entered. The district court's judgment thus suffers the same problem as the Government's initial proposal. There is no justification for this arbitrary limitation, which runs contrary to fundamental principles underlying associational litigation.

The Government's arguments below for time-bound relief were based on putative Article III standing principles and principles of equity, both of which it suggested required relief to be narrowed from "all members." Taking the standing argument first, the Government claimed that because "standing is to be determined as of the commencement of suit," *Lujan v. Defs.' of Wildlife*, 504 U.S. 555, 570 n.5 (1992), relief must be limited to those who had standing at the outset of the case. There are several problems with this. While *standing* is determined at the time a complaint is filed, that does not limit the ultimate *relief* that is ordered by the Court; these are separate principles. Once the case is underway, the continued existence of members who are harmed by the challenged policy becomes an issue of *mootness*, not one of standing. And it is an inherent feature of associational litigation, as this

Court recognized when it supplemented the record on appeal with Broussard's declaration, *see* ROA.1163, that membership may change over time, so that an association's case may be kept from mootness by the identification of *new* members who would otherwise have standing in their own right when the originally identified plaintiffs age out of the challenged restriction. Indeed, that the Plaintiff Organizations have been able to continue to identify new members throughout this suit who are presently harmed by the laws at issue demonstrates the shortcomings inherent in the Temporal Limitation. Because the Plaintiff Organizations had standing and at the beginning of this suit, and have maintained it since, the requirements of Article III are met and relief should flow to all of their affected members, both now and in the future, regardless of when they joined.

The Government's narrow view of the relief Article III allows is inconsistent with the Supreme Court's treatment of associational standing. The Court has explained that the very *purpose* of the doctrine is to allow organizations to seek to "vindicate the interests of [their] members" in court. *Brock*, 477 U.S. at 289–90. As noted above, the Supreme Court in *Brock* treated associational suits as similar-in-kind (and superior in some ways) to class litigation. *Id.* at 289. It is fundamental in a representative suit, whether a class action or a suit brought by an association, that membership may change overtime and the class of individuals who benefit from the litigation will be the individuals who are presently being harmed. *See, e.g., A.B. v.*

*Haw. State Dep't of Educ.*, 30 F.4th 828, 838 (9th Cir. 2022) ("Every year, as new freshmen matriculate into Campbell and as seniors graduate, the membership of potentially 25% of the student body may be expected to turn over." "[T]he fact that the membership of a class changes over time makes joinder of every class member all the more impracticable."). The contrary position, "limiting the permanent injunction to relief for only current members and not future members would result in continuous litigation and be a waste of judicial resources as well as the time and resources of the litigants." *Christian Emps. All.*, 719 F. Supp. 3d at 927. Indeed, it would effectively eliminate the benefits of associational standing and, rather than minimize "the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343, would require each and every one of the members hoping to benefit from the suit to have joined before litigation started (and, consistent with the rest of the Government's argument, have been identified then as well).

In some cases, extending relief to those who were not identified at the outset of a suit or upon entry of judgment, or were not members then, serves an even more important function than to further judicial economy and avoid duplicative litigation. To give one particularly critical example, in *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, the D.C. Circuit held that an organization suing on behalf of terminally ill members seeking access to experimental treatments

continued to have standing even though its original member-declarants had passed away:

> Because of the nature of their predicaments, many of those Alliance members who were members on July 28, 2003, when the complaint was filed, have succumbed to their terminal illnesses. However, the allegations in the complaint supplemented by the affidavits supplied by the Alliance establish that at least one member has standing to pursue this challenge.

469 F.3d 129, 134 (D.C. Cir. 2006) (cleaned up). It appears to be the Government's position that an organization like the Alliance's standing would vanish the moment each of the individuals who were members at the time the suit was filed passed away, even if new individuals in a similar profile were constantly being added to the organization's membership. And the same criticism would apply to the time-of-judgment limitation imposed by the district court: the effective relief would evaporate whenever the last person who was a member at the time judgment was entered passed away.

That argument runs contrary to the way courts have uniformly treated these issues in a variety of cases in which the affected members of an organization change over time. In such cases, courts, including the Supreme Court and this Court (in this case), have permitted associational litigants to identify new members on appeal in a variety of contexts where the originally identified members' claims might have become moot with the passage of time, a decision that would make no sense if those individuals could not support standing anyway because they were not members

when the case was originally filed. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 285–86 (2015) (Scalia, J., dissenting) (describing supplementation of the record in *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007)); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 680–81 (9th Cir. 2023); *Speech First, Inc. v. Sands*, 69 F.4th 184, 190 n.3 (4th Cir. 2023), *vacated as moot on other grounds*, 144 S. Ct. 675 (2024) (mem.). And this case is just one of several Second Amendment challenges to restrictions on 18-to-20-year-olds in which courts have recognized continued standing based on *new* members. *See Worth v. Jacobson*, 108 F.4th 677, 686–87 (8th Cir. 2024) (finding organizational plaintiffs challenging a ban on 18-to-20-year-olds carrying firearms for self-defense "have an unbroken chain of standing" through successive member declarants); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445–46 nn.28–29 (3d Cir. 2025) (same). In one such case, the Government recently acknowledged that an organization had continued standing based on successively identified members, without regard to whether they were members at the time the suit was filed. *See* Br. of Federal Respondents at 4, *W. Va. Citizens Def. League, Inc. v. ATF*, No. 25-132 (U.S. Oct. 20, 2025) ("Petitioner correctly observes that this case does not present [a] mootness concern," because the association "has identified a member who was 19 years old as of May 21, 2025" and furthermore has "thousands of members" who it could additionally identify. (citation omitted)).

Nothing in any of the Government's Article III argument below supported an entry-of-judgment cutoff for relief any more than it supports a moment-of-filing cutoff. The Government therefore turns, second, to a fairness argument. It argued below that permitting relief to extend to the full membership of the Plaintiff Organizations "create[s] the possibility of asymmetrical preclusion," ROA.1240 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring)), as members of a victorious association, even members who joined after judgment, could reap the benefits of injunctive relief without having risked preclusion of their own separate suits, had the association lost.

This argument only makes sense if one ignores the fact that the actual parties before the Court are the Plaintiff Organizations—and the Plaintiff Organizations undoubtedly would be subject to ordinary preclusion rules to prevent them from relitigating this issue in the future had they lost. That members would not necessarily be so bound is something the Supreme Court has long recognized. *See UAW*, 477 U.S. at 290 ("Should an association be deficient [in representing the interests of their members], a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles."). The Government's own authority in fact makes this clear. Justice Thomas's concurrence in *FDA*, which it cited below as having flagged this concern, is not the law, and what is more, reaffirms that under governing precedent "[i]f a single member of an

association has suffered an injury, our doctrine permits that association to seek relief for its entire membership." 602 U.S. at 399 (Thomas, J., concurring).

This argument is an odd one for the Government to raise in this suit. The Government is, unique among litigants, not subject to preclusion principles when it loses a case. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("[N]onmutual offensive collateral estoppel simply does not apply against the government."). It would be an unlikely equity argument from the Government then, in the best of postures, but it is particularly poor here. If the Government was concerned with the nationwide, long-term effects of having a federal statute held unconstitutional insofar as it restricts 18-to-20-year-olds, it could have sought (and very likely received) Supreme Court review of that decision which *would* have effectively closed the issue even for non-parties to this suit. That it declined to do so is further reason not to credit its concerns here.

## CONCLUSION

For these reasons, the district court's order should be reversed and this case should be remanded with instruction that judgment affording complete relief to Plaintiffs' members be entered.

Dated: June 22, 2026      Respectfully submitted,

George J. Armbruster, III    /s/ David H. Thompson
ARMBRUSTER & ASSOCIATES, APLC  David H. Thompson

332 E. Farrel Road, Suite D  
Lafayette, LA 70508  
(337) 889-5511  
george@arm-assoc.com

Counsel of Record  
Peter A. Patterson  
William V. Bergstrom  
COOPER & KIRK, PLLC  
1523 New Hampshire Ave., NW  
Washington, D.C. 20036  
(202) 220-9600  
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellants/Cross-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit on June 22, 2026 by using the appellate CM/ECF system and that service was accomplished on all counsel of record by the appellate CM/ECF system.


Dated: June 22, 2026　　　　　　　　/s/ David H. Thompson
　　　　　　　　　　　　　　　　　David H. Thompson

　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs-*
　　　　　　　　　　　　　　　　　*Appellants/Cross-Appellees*

**CERTIFICATE OF COMPLIANCE**

I certify that this Brief of Plaintiffs-Appellants/Cross-Appellees complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 6,654 words, excluding the parts exempted by FED. R. APP. P. 32(f).

This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: June 22, 2026                                  /s/ David H. Thompson
                                                      David H. Thompson

                                                      *Counsel for Plaintiffs-*
                                                      *Appellants/Cross-Appellees*