**No. 26-30154**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Firearms Policy Coalition, Incorporated; Second Amendment Foundation; Louisiana Shooting Association,

Plaintiffs-Appellants,

v.

Bureau of Alcohol, Tobacco, Firearms, and Explosives; Daniel Driscoll, Acting Director, U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives; Todd Wallace Blanche, U.S. Attorney General,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Western District of Louisiana
6:20-cv-1438

---

**BRIEF FOR DEFENDANTS**

---

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD
STEVEN H. HAZEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2498*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants are governmental parties. 5th Cir. R. 28.2.1.

*s/ Steven H. Hazel*
Steven H. Hazel

## STATEMENT REGARDING ORAL ARGUMENT

As discussed below, this case no longer presents a live controversy. The government therefore respectfully submits that oral argument is unnecessary.

# TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF AUTHORITIES | iv |
| INTRODUCTION | 1 |
| STATEMENT OF JURISDICTION | 2 |
| STATEMENT OF THE ISSUES | 2 |
| STATEMENT OF THE CASE | 3 |
| SUMMARY OF ARGUMENT | 6 |
| STANDARD OF REVIEW | 7 |
| ARGUMENT | 7 |
| I. This Case Is Moot | 7 |
| II. Ordinary Article III and Equitable Principles Govern Relief for Associational Plaintiffs | 11 |
| CONCLUSION | 24 |
| CERTIFICATE OF SERVICE | |
| CERTIFICATE OF COMPLIANCE | |

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) .......... 23

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 8, 9

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) .......... 13, 16

*Application of 18 U.S.C. § 922(b)(1) and (c)(1) to Young Adults*,
Slip op. (O.L.C. Sep. 17, 2026),
https://www.justice.gov/olc/media/1461811/dl .......... 1, 6, 8, 10

*Bayou Liberty Ass'n, Inv. v. U.S. Army Corps of Eng'rs*,
217 F.3d 393 (5th Cir. 2000) .......... 7

*Beatty v. Kurtz*,
27 U.S. (2 Pet.) 566 (1829) .......... 22

*Biden v. Nebraska*,
600 U.S. 477 (2023) .......... 12

*Brown v. ATF*,
No. 23-2275, 2025 WL 1704429 (June 18, 2025) .......... 11

*Campaign for Accountability v. U.S. Dep't of Just.*,
155 F.4th 724 (D.C. Cir. 2025) .......... 8

*Casa De Md. v. U.S. Dep't of Homeland Sec.*,
924 F.3d 684 (4th Cir. 2019) .......... 8, 10

*Church of Scientology v. United States*,
506 U.S. 9 (1992) .......... 8

*eBay Inc. v. MercExchange LLC*,
547 U.S. 388 (2006) .......... 2, 11

*Energy Mgmt. Corp. v. City of Shreveport*,
397 F.3d 297 (5th Cir. 2005) .......... 12

*Family Rehab., Inc. v. Becerra*,
16 F.4th 1202 (5th Cir. 2021) .......... 7

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 15, 16

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 14, 19

*International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*,
477 U.S. 274 (1986) .......... 19

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 12, 15

*McCoy v. ATF*,
140 F.4th 568 (4th Cir. 2025) .......... 5, 11, 17

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023) .......... 19, 20

*National Rifle Ass'n v. Bondi*,
133 F.4th 1108 (11th Cir. 2025) .......... 5, 17

*Reese v. ATF*,
127 F.4th 583 (5th Cir. 2025) .......... 1, 4

*Spell v. Edwards*,
962 F.3d 175 (5th Cir. 2020) .......... 7

*Spencer v. Kemna*,
523 U.S. 1 (1998) .......... 7

*Students for Fair Admissions, Inc. v. University of Tex.*,
142 F.4th 819 (5th Cir. 2025) .......... 9, 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 14

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 12, 14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .............................................. 12, 15, 15-16, 17, 19, 20, 21, 22, 23

*U.S. Navy SEALs 1-26 v. Biden*,
72 F.4th 666 (5th Cir. 2023) ........................................................................ 7, 9, 10

*United States v. Mendoza*,
464 U.S. 154 (1984) ........................................................................................ 13

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018) ........................................................................................ 12

*Warth v. Seldin*,
422 U.S. 490 (1975) .................................................................................. 14, 18, 19

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982) ........................................................................................ 17

*Yakus v. United States*,
321 U.S. 414 (1944) ........................................................................................ 17

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) ........................................................................... 13

**Statutes:**

Gun Control Act of 1968 (GCA)
Pub. L. No. 90-618, tit. I, 82 Stat. 1213......................................................... 3
18 U.S.C. § 921(a)(21) ................................................................................. 3
18 U.S.C. § 921(a)(21)(C) ............................................................................ 3
18 U.S.C. § 922(a)(1) ................................................................................... 3
18 U.S.C. § 922(b)(1) ................................................................................ 1, 3
18 U.S.C. § 922(c)(1) ................................................................................. 1, 3

28 U.S.C. § 1291 ................................................................................................. 2

28 U.S.C. § 1331 ................................................................................................. 2

**Regulation:**

27 C.F.R. § 478.99(b) ......................................................................................... 3

**Rule:**

Fed. R. Civ. P 23(a) ........................................................................................ 20-21

**Other Authorities:**

Joseph Story, *Commentaries on Equity Pleadings* (3d ed., Boston, Charles C. Little & James Brown 1844) ........................................................... 21

FPC, *FPC Statement Regarding Membership*, https://www.firearmspolicy.org/fpc-statement-regarding-membership ........................................................................................ 16

SAF, *The NFA Injunction: What You Need To Know*, https://perma.cc/U6XP-AN68........................................................................ 16

## INTRODUCTION

This case began as a Second Amendment challenge to provisions of the Gun Control Act of 1968 (GCA) that prohibit federally licensed firearms dealers from selling handguns to individuals under age 21. 18 U.S.C. § 922(b)(1), (c)(1). This Court previously held that those provisions are inconsistent with the Second Amendment, and the merits of that determination are not in dispute here. *See Reese v. ATF*, 127 F.4th 583, 586 (5th Cir. 2025). Instead, the only issue addressed in the judgment on appeal is the scope of relief available to plaintiffs.

On September 17, 2026, in response to a question from the Attorney General, the Department of Justice's Office of Legal Counsel (OLC) determined that Sections 922(b)(1) and (c)(1), along with their implementing regulations, are inconsistent with the Second Amendment. *Application of 18 U.S.C. § 922(b)(1) & (c)(1) to Young Adults*, 50 Op. O.L.C. (Sep. 17, 2026) (slip op. at 1), https://perma.cc/NG9V-9AKS (OLC Op.). OLC concluded that the challenged restrictions "may not be enforced to impose criminal penalties on dealers who sell handguns" to persons between the ages of 18 and 21. OLC Op. 49.

In light of that determination, this dispute is now moot. The Department of Justice's determination that it will not enforce the challenged provisions against anyone, anywhere, demonstrates that there is no longer a live controversy. The Court thus need not, and should not, address the scope of relief questions that otherwise would have been presented. And even if the Court determines that the case is not

moot, the OLC opinion demonstrates that there is no basis for expanding the permanent injunction in the manner plaintiffs request. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (explaining that a permanent injunction is appropriate only if, among other things, a plaintiff demonstrates "irreparable injury" and that other remedies "are inadequate to compensate for that injury"). If the Court nevertheless reaches the underlying issue here, it should make clear that ordinary Article III and equitable principles apply to associational plaintiffs, just as they govern the scope of relief available in all other litigation.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. ROA.324. The district court entered final judgment on October 7, 2025, ROA.1263-64, vacated that judgment on October 14, 2025, ROA.1270, and entered a new final judgment on January 27, 2026, ROA.1278. Plaintiffs filed a timely notice of appeal on March 17, 2026, ROA.1280.[1] This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether this case no longer presents a live controversy, and,

[1] The government also filed a notice of appeal, *see* ROA.1282, but has moved to dismiss that appeal.

2. If this Court determines that the case is not moot, whether any injunction should be limited in accordance with Article III and longstanding equitable principles.

## STATEMENT OF THE CASE

**A.** The GCA includes provisions prohibiting federal firearms licensees from selling handguns to "any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age." Pub. L. No. 90-618, tit. I, sec. 101, § 922(b)(1) 82 Stat. 1213, 1218 (1968) (codified at 18 U.S.C. § 922(b)(1)).[2] Related statutory provisions prohibit licensees from selling handguns to anyone "who does not appear in person at the licensee's . . . premises" unless the purchaser submits a sworn statement attesting that they are "twenty-one years or more of age." 18 U.S.C. § 922(c)(1) (quotation marks omitted). The Bureau of Alcohol, Tobacco, Firearms, and Explosives has issued regulations implementing these provisions. *See* 27 C.F.R. § 478.99(b).

**B.1.** Plaintiffs challenged these restrictions on Second Amendment grounds and requested declaratory and injunctive relief. ROA.340-41. Plaintiffs are three individuals who were between the ages of 18-21 when the operative complaint was

[2] A federal firearms license is someone "engage[d] in the business of importing, manufacturing, or dealing in firearms" or "ammunition." 18 U.S.C. § 922(a)(1). A person is "engaged in the business" of dealing in firearms, *id.* § 921(a)(21), if that person "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms," *id.* § 921(a)(21)(C).

filed and three membership organizations, Firearms Policy Coalition, Inc. (FPC), Second Amendment Foundation (SAF), and the Louisiana Shooting Association. ROA.321-23. In asserting Article III standing, the associational plaintiffs relied on the individual plaintiffs, who are members of each association. ROA.321-23.

**2.** Although the district court granted the government's motion to dismiss plaintiffs' suit, this Court reversed. *See Reese v. ATF*, 127 F.4th 583, 600 (5th Cir. 2025). In a precedential opinion, the Court held that the challenged restrictions "are unconstitutional in light of our Nation's historic tradition of firearm regulation." *Id.* The Court remanded to the district court for it enter appropriate relief. *See id.*

While the constitutional issue was pending before this Court, plaintiffs moved to supplement the record. Plaintiffs explained that all three individual plaintiffs named in the operative complaint had or would soon turn 21. ROA.1167. "To avoid any suggestion of mootness in this case," plaintiffs submitted a declaration from an individual who is a member of each organizational plaintiff and is under the age of 21. ROA.1167. This Court granted the motion and directed the district court to add the declaration to its docket. ROA.1163.

**3.** On remand, the district court requested that the parties submit proposed judgments. The government proposed that any relief be limited to plaintiffs and to any individuals "who . . . were members" of the plaintiff organizations when the operative complaint was filed and who "have been identified" to the government. ROA.1225. By contrast, plaintiffs requested an injunction encompassing all members

of the plaintiff organizations, including unidentified members as well as anyone who becomes a member in the future. ROA.1258.

The district court did not fully embrace either proposal. Instead, it initially entered a judgment requiring the organizational plaintiffs to provide the government with "verified list of their members" as of the date the judgment was entered and granting injunctive relief as to those members. ROA.1263-64. At the parties' joint request, the court vacated that judgment so that plaintiffs would not be compelled to disclose the identities of all their members, regardless of whether they are affected by the federal restrictions or wish to benefit from the injunction. ROA.1265-66.

The district court then entered a final judgment declaring the federal restrictions unconstitutional and enjoining the government from enforcing them against plaintiffs and "anyone who is a member of one or more of the Plaintiffs as of the date of [the] entry of this judgment." ROA.1278-79. The injunction only prohibits enforcement "within the jurisdictional boundaries of the United States Court of Appeals for the Fifth Circuit." ROA.1278. It does not require plaintiffs to inform the government who is covered by the injunction.

**4.** The provisions of the GCA at issue here are the subject of a split among the circuits. *See McCoy v. ATF*, 140 F.4th 568 (4th Cir. 2025) (holding that the provisions are constitutional); *see also National Rifle Ass'n v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc) (holding that a state ban on the purchase of firearms by those under 21 is constitutional). The Attorney General recently asked the Department of Justice's

OLC whether Sections 922(b)(1) and (c)(1), along with their implementing regulations, comport with the Second Amendment. OLC Op. 1. On September 17, 2026, OLC addressed those questions in a published opinion. *See id.* OLC determined that the challenged restrictions are inconsistent with the Second Amendment. OLC Op. 49. OLC concluded that the challenged restrictions "may not be enforced to impose criminal penalties on dealers who sell handguns" to persons between the ages of 18 and 21. *Id.*

## SUMMARY OF ARGUMENT

**I.** In light of the OLC opinion, this case is moot. Plaintiffs challenge federal restrictions on the commercial sale of handguns to individuals under the age of 21. But OLC has now concluded that those restrictions are unconstitutional and "may not be enforced." OLC Op. 49. That opinion eliminates any prospect that plaintiffs or their members will be subject to enforcement action for violations of the challenged restrictions. Plaintiffs thus lack any legally cognizable interest in continuing this suit, and it should be dismissed.

**II.** If this Court concludes that this case continues to present a live controversy and reaches the scope of relief, it should apply ordinary principles of standing and equity that plaintiffs largely ignore. An organization may establish standing to press the claims of its members. But that is subject to the same rules as all other litigation: standing is assessed at the time the operative complaint is filed; individuals without standing are not entitled to, and thus cannot receive, relief; and an organization can

only press the claims of (and thus bind to a final judgment) its actual existing members, not hypothetical future members whose claims could not possibly be before the court. Plaintiffs' policy arguments cannot justify converting organizational litigation into an automatic entitlement to a remedy exempt from all ordinary Article III and equitable principles.

## STANDARD OF REVIEW

Whether this case is moot presents a "question of law" that this Court reviews "de novo." *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000). Whether an injunction falls within the scope of a district court's equitable authority is also question of law subject to de novo review. *See Family Rehab., Inc. v. Becerra*, 16 F.4th 1202, 1204 (5th Cir. 2021) (per curiam). When a court acts within its equitable authority, an injunction is subject to review for abuse of discretion. *Id.*

## ARGUMENT

### I. This Case Is Moot

**A.** As the Supreme Court has explained, a case becomes moot when it "no longer present[s] a case or controversy under Article III, § 2, of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Id.* (quotation marks omitted). Because the mootness doctrine "ensures federal courts are only deciding live cases or controversies," *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir.

2020), "[i]f a dispute ceases mid-litigation, so does [the Court's] jurisdiction," *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023).

As relevant here, a case is moot where "the parties lack a legally cognizable interest in [its] outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). That is true if an intervening event "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation marks omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already*, 568 U.S. at 91 (quotation marks omitted).

Under these principles, this case is moot. As explained, the Attorney General recently asked OLC to address the constitutionality of the provisions here. OLC Op. 1. In response, OLC issued an opinion concluding that the challenged restrictions are inconsistent with the Second Amendment and "may not be enforced." OLC Op. 49. That opinion "reflect[s] the legal position of the executive branch" and contains what is "generally viewed as . . . binding interpretive guidance for executive agencies." *Casa De Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) (quotation marks omitted); *see Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 729 (D.C. Cir. 2025) ("Executive Branch officials consider final OLC opinions to be 'controlling legal advice.'"). Because the Executive Branch has now concluded that

the challenged restrictions are unconstitutional, there is no imminent risk that the government will enforce those restrictions against anyone, including plaintiffs and their members. Thus, plaintiffs no longer have a "legally cognizable interest in the outcome" of this case. *Already*, 568 U.S. at 91 (quotation marks omitted).

**B.** In rare circumstances, exceptions to the mootness doctrine may permit a court to continue exercising jurisdiction over a case even when the challenged conduct has ceased. For example, a defendant's voluntary cessation of challenged conduct may not moot a case when the conduct can "reasonably be expected to recur." *U.S. Navy SEALs*, 72 F.4th at 673. Or a dispute may be "capable of repetition yet evad[ing] judicial review." *Id.* at 675. Neither of these exceptions to the usual rule apply here.

**1.** Under the voluntary-cessation doctrine, a court will "evaluate[] the risk that a defendant is engaging in 'litigation posturing' to avoid judicial review," *U.S. Navy SEALs*, 72 F.4th at 673, with an eye toward determining whether the challenged conduct "cannot reasonably be expected to [occur]," *Students for Fair Admissions, Inc. v. University of Tex.* (*SFFA*), 142 F.4th 819, 827 (5th Cir. 2025).

These principles confirm that the exception does not apply here. The very notion that the OLC opinion—which was prepared at the Attorney General's request and concludes that an Act of Congress is unconstitutional—might constitute mere "litigation posturing" is extraordinary. *SFFA*, 142 F.4th at 826 (quotation marks omitted). And the fact that this litigation has persisted for many years, yet OLC only

issued the opinion following the Attorney General's request, confirms that the "impetus was [that request], not this litigation." *Id.* Because OLC has issued a final opinion concluding that the challenged restrictions are unconstitutional—an opinion that "reflect[s] the legal position of the executive branch," *Casa De Md.*, 924 F.3d at 692 n.1 (quotation marks omitted)—and there is "no indication that" the Executive Branch "intends to reconsider that decision," *SFFA*, 142 F.4th at 826 (quotation marks omitted), there is no reasonable prospect that the challenged conduct will recur.

**2.** Nor is this dispute subject to the exception from mootness for cases that are capable of repetition yet evading review. That doctrine applies only in exceptional circumstances where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *U.S. Navy SEALs*, 72 F.4th at 675 (alterations and quotation marks omitted).

Neither prerequisite is present here. At the outset, as explained above, *see supra* pp. 8-10, there is no reasonable expectation that plaintiffs will be subject to the challenged restrictions. The OLC opinion concludes that the restrictions "may not be enforced," and the Executive Branch treats such opinions as controlling. OLC Op. 49. Nor is this a case where the nature of the challenged action is too short for a challenge "to be fully litigated." *U.S. Navy SEALs*, 72 F.4th at 675 (quotation marks omitted). The provisions at issue would apply for a three-year period in any prospective plaintiff's life (between the ages of 18 and 21), and multiple plaintiffs

challenging the restrictions have succeeded in litigating their claims to final judgment. *See, e.g.*, *McCoy v. ATF*, 140 F.4th 568, 573 (4th Cir. 2025); *Brown v. ATF*, No. 23-2275, 2025 WL 1704429, at *1 (4th Cir. June 18, 2025) (per curiam).

## II. Ordinary Article III and Equitable Principles Govern Relief for Associational Plaintiffs

For the reasons given above, this case is moot. The Court thus need not and should not reach the only substantive question presented, which concerns the scope of the injunctive relief the district court entered. And even if the Court concludes that the case is not moot, it is plain at this stage that plaintiffs' request for a broader permanent injunction than the one the district court entered would fail on its own terms. Permanent injunctive relief does not flow automatically from success on the merits, but is available only where (*inter alia*) a plaintiff has shown both "irreparable injury" and that other remedies "are inadequate to compensate for that injury." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). At a minimum, given the Executive Branch's determination that it will not enforce the challenged restrictions here against *anyone* because it has determined that they are unconstitutional, plaintiffs cannot demonstrate that a broader permanent injunction is necessary to prevent "irreparable injury," or that other remedies (such as declaratory relief) would not be sufficient. There would thus be no basis on which this Court could direct the entry of a broader permanent injunction, regardless of whether—as plaintiffs contend—such

relief would have been within the district court's authority at the time judgment was entered.

Those considerations alone should resolve this case. But to the extent this Court considers the scope of injunctive relief available to associational plaintiffs, it should make clear that relief for associational plaintiffs is governed by the same Article III and equitable principles that govern relief for all other plaintiffs.

**A.** Several bedrock Article III and equitable principles governing relief are relevant here. Begin with Article III: although the presence of one plaintiff with standing is sufficient basis for a court to reach the merits of a dispute, *see Biden v. Nebraska*, 600 U.S. 477, 489 (2023), it is equally clear that "Article III does not give federal courts the power to order relief to any uninjured plaintiff," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quotation marks omitted). Thus, at the remedial stage, a court may do no more than "provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). And for all purposes, standing is determined when the operative complaint is filed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005).

Equity and related principles provide further guidance about appropriate remedies. Those who are not parties to a case are neither benefitted nor burdened by a judgment absent some specific agreement or relationship (such as a class action) that justifies applying that judgment to them. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008).

And when such a relationship exists, the results are symmetrical: those whose interests are litigated are equally bound by a win, by a loss, or by a settlement that resolves their claims. *Id.*; *see id.* at 893-95; *United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018). To preserve that symmetry, equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (noting elimination of the possibility of "one-way intervention" in class actions to avoid an unfavorable judgment (quotation marks omitted)); *see United States v. Mendoza*, 464 U.S. 154, 158-63 (1984) (refusing to extend non-mutual collateral estoppel to allow nonparties to estop the federal government from litigating issues decided in earlier cases with other plaintiffs).

**B.** Application of those principles is straightforward here. Plaintiffs claim to represent "members throughout the United States," ROA.321-22, but they have never asserted—and could not assert—that *all* of their members have standing. Any members who, for example, fall outside the age range covered by the challenged restrictions, or members who are in the age range but lack any concrete intention to obtain a handgun in violation of the restrictions, would lack standing. *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (explaining that a "serious intention to engage in conduct proscribed by law" is necessary to establish standing). Such

members thus have no claim the organizational plaintiffs could possibly bring on their behalf. Plaintiffs thus can represent only a subset of their members.

Plaintiffs nevertheless posit that associational relief is not bound by any of the basic principles of Article III or equity described above. They insist that they are entitled to an injunction encompassing all "their affected members, both now and in the future, regardless of when they joined." Br. 23.

There is no basis for treating associational standing as an exception to all ordinary rules of litigation. Absent an injury to the association itself—and none is asserted here—an association may "assert the claims of its members." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977). The requirements of Article III are not "attenuate[d]" in that context. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Thus, to establish standing to litigate the case on the merits, organizations must identify an injured member or members whose claims they press. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). But as in all other contexts, the mere presence of one member with standing does not determine the appropriate scope of relief: "Article III does not give federal courts the power to order relief to any uninjured plaintiff." *TransUnion*, 594 U.S. at 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)). Yet plaintiffs' apparent view is that a court can—indeed, must—order such relief as to a host of members who have no claim, or at a minimum have not established their standing at any point in the litigation. Basic principles of redressability require more. *See, e.g.*,

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

Even more remarkable is plaintiffs' assertion that the district court erred by not extending relief to all *future* members of the associations. The salient point about *future* members is that they are *not*, and have never been at any point in this litigation, members of the associations. The associations thus could not possibly be entitled to assert the claims of *non-members*. That is true both as an Article III matter—because standing, and thus the universe of members potentially eligible for relief, is determined when the operative complaint is filed, *Lujan*, 504 U.S. at 570 n.5, and because the associations cannot assert any injury to non-members—and based on fundamental principles of adversarial litigation. The associations here presumably do not accept that future members would be bound by any *loss* the associations suffer in litigation, and if the associations cannot bind future members to a loss, they equally cannot claim to bind future members to a win. Yet that is precisely what plaintiffs assert here: they can win on behalf of future members but never lose. That "possibility of asymmetrical preclusion" cannot be squared with basic principles of equity. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring); *cf. CASA*, 606 U.S. at 855 (noting that "universal injunctions" likewise "operate asymmetrically").

Other equitable principles reinforce the point. Providing injunctive relief to future members of an organizational plaintiff would also conflict with "[Federal Rule

Civil Procedure] 23's limits on class actions." *CASA*, 606 U.S. at 849. As Justice Thomas has explained, "[a]ssociational standing," if taken to the outer limits exemplified by plaintiffs' request in this case, "achieves" the "same end goal" as a class action—"relief to a large group of people" via a single lawsuit—without calling for application of "any of the ordinary requirements" for class-wide relief. *Alliance*, 602 U.S. at 402 (Thomas, J., concurring); *cf. CASA*, 606 U.S. at 850 ("Why bother with a Rule 23 class action when the quick fix of a universal injunction is on the table?"). This Court should reject any such understanding of equity.

Similarly, plaintiffs' view would allow exactly the sort of strategic gamesmanship foreclosed in the class-action context, *see American Pipe*, 414 U.S. at 547, by allowing non-members to delay joining an association until the association has obtained—or seems likely to obtain—a favorable judgment. And it would enable associations to auction off district court judgments to strangers to the litigation. Indeed, the organizations here are clear about that: one of them touts membership as a tool for being "protect[ed] . . . under some court injunctions" and suggests that membership can enable individuals to avoid "the Supreme Court's *Trump v. CASA* decision." FPC, *FPC Statement Regarding Membership* (May 30, 2023), https://www.firearmspolicy.org/fpc-statement-regarding-membership. Another plaintiff similarly encourages individuals who "want the protection [of an] injunction" to become members. SAF, *The NFA Injunction: What You Need to Know*, https://perma.cc/U6XP-AN68.

At an absolute minimum, even if plaintiffs were correct that a court *could* grant relief to future members of an organization, they cannot establish that the district court abused its discretion by limiting relief to members of the plaintiff associations when the judgment was entered. While Article III and equitable principles establish maximum limits on injunctive relief, providing less than the maximum available relief is ordinarily within a court's "sound discretion." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). As the Supreme Court cautioned in *CASA*, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." 606 U.S. at 854. In determining whether to enter less than the maximum relief available, a court "balances the conveniences of the parties and possible injuries to them." *Yakus v. United States*, 321 U.S. 414, 440 (1944).

Here, the district court did not abuse its discretion in fashioning relief narrower than plaintiffs requested. It was not obligated to award permanent injunctive relief to future members who would not have been bound by an adverse judgment and who might join the plaintiff organizations solely to gain the benefit of the injunction, without having taken any corresponding risk in the litigation. Moreover, given that the underlying merits issue was subject to active litigation in other courts—including circuits that had upheld the same provisions at issue here or similar provisions, *see McCoy*, 140 F.4th at 573; *National Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1130 (11th Cir. 2025) (en banc)—the district court could properly decline to extend injunctive relief to encompass even members within the boundaries of other courts of appeals that

had, or might, opine on the issue. And here, too, the OLC opinion only confirms that there is no basis to further expand the judgment: as noted, plaintiffs have no need for such relief given the determination that the challenged provisions will not be enforced against anyone, anywhere.

**C.** Plaintiffs do not dispute that extending relief to future members of the plaintiff associations would allow anyone to obtain the benefit of the injunction by strategically joining those associations. And plaintiffs never identify any practical difference between such relief and the universal injunctions that the Supreme Court prohibited in *CASA*.

**1.** Instead, plaintiffs principally contend (Br. 13-16, 23-24) that decades-old Supreme Court decisions regarding associational standing entitle associational plaintiffs to relief that resembles a universal injunction. Plaintiffs suggest that the Court's cases "recognize[]" that an associational plaintiff "can *get relief* for . . . members who are not personally before the Court"—or even members when the judgment was entered. Br. 12. But the cases on which plaintiffs rely address Article III standing, not the permissible scope of relief. And to the extent associational standing cases inform the remedies question here, those cases confirm that relief cannot extend to future members.

We have already noted that in *Warth*, the Supreme Court recognized that where an association asserts standing "solely as the representative of its members," Article III's requirements are not "attenuate[d]." 422 U.S. at 511. Thus, to support standing,

an association must establish "that its members, or any one of them, are suffering immediate or threatened injury." *Id.* Given that an association has standing to sue only insofar as it establishes that it has members with cognizable injuries, it is difficult to understand why an association would be entitled to relief extending beyond those members. Indeed, *Warth* justified associational standing in part by noting that relief provided to an association will ordinarily "inure to the benefit of those members of the association actually injured," *id.* at 515, not those with no stake at all in the litigation.

Other Supreme Court decisions on which plaintiffs rely (Br. 12-13, 23-24) reinforce the same point. In *Hunt*, the Court held that a state government entity representing apple growers had standing to challenge another state's apple-marketing restrictions. 432 U.S. at 343. And in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, the Court concluded that a union had standing to challenge a federal interpretation of a labor law. 477 U.S. 274, 279 (1986). Neither decision resolved any scope-of-relief question, much less held that relief should flow to future members of an organizational plaintiff. And both decisions applied ordinary standing principles. *See Hunt*, 432 U.S. at 344; *Brock*, 477 U.S. at 283. The natural implication of that approach is that ordinary remedial principles likewise apply.

The extent of plaintiffs' misunderstanding of Supreme Court precedent is illustrated by their claim that an injunction must "provide complete relief." Br. 14

(quoting *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023)). As discussed, *CASA* clarifies that "[c]omplete relief is not a guarantee—it is the maximum a court can provide." 606 U.S. at 854. In any event, "complete relief" involves relief "*to the plaintiffs before the court*," not "relief to *everyone* potentially affected by an allegedly unlawful act." *Id.* at 852; *see id.* at 861 ("complete relief to each plaintiff with standing to sue"). Here, plaintiffs request relief extending to individuals who were not members when the judgment was entered, and who were thus not "before the court" in any sense, as well as a host of members whose standing has never been established. *See id.* at 852 (emphasis omitted).

Unable to ground their position in Supreme Court precedent, plaintiffs insist that other courts "often grant relief in favor of . . . an organization's entire affected membership." Br. 15. But the only Fifth Circuit decision plaintiffs identify did not grant or endorse such a remedy; instead, it remanded for the district court to "determine the scope of any relief." *Mock*, 75 F.4th at 567. And although plaintiffs cite various out-of-circuit decisions (Br. 15), they do not suggest that any of those decisions meaningfully engaged with the questions here. As *CASA* reflects, the fact that some courts have issued relief that departs from longstanding equitable principles is a reason to enforce those principles, not a reason to condone the departure. *Cf. CASA*, 606 U.S. at 840 (observing that courts had issued a large number of universal injunctions in recent years and concluding that such injunctions are impermissible).

**2.** Plaintiffs fare no better in invoking history "extend[ing] back to the Founding and before." Br. 19. As plaintiffs emphasize, class actions sometimes involve relief extending to absent class members, and class actions trace their roots to "the earliest days of English law." Br. 20 (quotation marks omitted). But as *CASA* explained, the class action mechanism and its historical precursors have many prerequisites. *See* Fed. R. Civ. P. 23(a) (establishing numerosity, commonality, typicality, and adequacy requirements); *CASA*, 606 U.S. at 849 (noting that the historical requirements were "virtually identical"). Those "limits on class actions underscore a significant problem" with plaintiffs' requested relief. *CASA*, 606 U.S. at 849. Plaintiffs' approach would create a "workaround" permitting associational claimants to obtain what is essentially class-wide relief without "bother[ing]" to satisfy the strictures of a "Rule 23 class action." *Id.* at 850. *CASA* forecloses that result.

Apart from class actions and their antecedents, plaintiffs fail to identify any historical case where a court entered equitable relief extending to future members of an organization. Plaintiffs highlight a treatise authored by Justice Story, who noted that "voluntary association[s]" may "represent the rights and interests of the whole [group]" even if not every member is a party in the suit. Joseph Story, *Commentaries on Equity Pleadings* § 107 (Bos., Charles C. Little & James Brown 3d ed. 1844). That passage reflects the uncontroversial proposition that not every member of a large group needs to appear as a named plaintiff for that group's suit to proceed. Nothing in the cited passage suggests that an association is entitled to relief covering future

members. To the contrary, the treatise provides examples of associational suits—including suits brought by shareholders and creditors—where membership would ordinarily be fixed when the suit was filed. *See id.* §§ 107-119.

No more successful is plaintiffs' reliance (Br. 20) on *Beatty v. Kurtz*, an 1829 case where the Supreme Court ruled in favor of a group of parishioners who sought to reclaim a plot of land designated for their church, 27 U.S. (2 Pet.) 566, 585 (1829). To the extent that returning land to the church might ultimately benefit future members of the congregation, any such benefit was "only incidental[]." *CASA*, 606 U.S. at 851 (explaining that the fact that equitable relief sometimes produces such "incidental[]" benefits does not support granting relief to non-parties).

**3.** Plaintiffs' remaining arguments are similarly unavailing. Plaintiffs note, for example, that courts sometimes permit associational plaintiffs to "supplement[] the record" by identifying additional injured members after a suit is filed. Br. 23. When this case was previously before this Court, plaintiffs sought to preempt mootness concerns by submitting an affidavit from a current member "who would . . . have standing in [his] own right when the originally identified plaintiffs age[d] out of the challenged restriction." *Id.*; *see* ROA.1163. That filing is not materially different from submitting an amended complaint that names an additional plaintiff, and would presumably have taken that form if the case had been before the district court at the time. Thus, the relevant individual is in the same position as any member named in the operative complaint and is not excluded from any injunction's scope by the

principles discussed in this brief. And that fact also illustrates that plaintiffs are wrong to contend (Br. 21) that the district court's injunction would benefit "no one"; the government does not dispute that the newly identified member would be entitled to relief.

Finally, plaintiffs resort to policy concerns. They claim that if the injunction excludes future members, the result will be "hundreds of thousands, if not millions of individuals, bringing suits or joining mass actions to vindicate their constitutional rights." Br. 13. That concern is both irrelevant and overblown. It is irrelevant because, as *CASA* makes clear, "the policy pros and cons" of relief "are beside the point" when considering the limits of a federal court's power to grant relief. 606 U.S. at 855-56. Indeed, *CASA* rejected similar forecasts of "confusion or piecemeal litigation that imposes unnecessary costs on courts and others" as a basis for accepting such relief. *Id.* at 855. And in any event, the availability of class action relief substantially undercuts such claims, as does the fact that circuit precedent will often settle a question for a substantial portion of the country—as, indeed, the precedential effect of this Court's prior decision in *Reese* has meant that even non-parties to this litigation have faced no threat of prosecution under the provisions challenged here within this Circuit. Similarly, plaintiffs' hypothetical about "effective relief" for an organization suing on behalf of "terminally ill members seeking access to experimental treatments," Br. 24-25 (citing *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 134 (D.C. Cir. 2006)), ignores that such an

organization could request expedition, move for preliminary relief, or attempt to certify a class.

**CONCLUSION**

For the foregoing reasons, this appeal should be dismissed as moot. If this Court concludes that the case is not moot, it should reject plaintiffs' request to expand the permanent injunction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD

*s/ Steven H. Hazel*
STEVEN H. HAZEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7217*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2498*
*Steven.H.Hazel@usdoj.gov*

October 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Steven H. Hazel*
Steven H. Hazel

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,924 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Steven H. Hazel*
Steven H. Hazel